IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 14, 2015

**JAMES RANDALL ROSKAM v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2010C2679    Cheryl A. Blackburn, Judge**

_____

**No. M2014-00599-CCA-R3-PC - Filed May 27, 2015**

_____

Petitioner, James Roskam, appeals from the post-conviction court's denial of his petition for post-conviction relief. Petitioner was convicted of aggravated robbery and was sentenced to twenty years in confinement as a Range II multiple offender. Petitioner challenged his conviction on appeal, and a panel of this court affirmed the judgment of the trial court. *State v. James Randall Roskam*, No. M2011-02071-CCA-R3-CD, 2012 WL 3611749 (Tenn. Crim. App., Aug. 20, 2012), *perm. app. denied* (Tenn., Nov. 26, 2012). On appeal, Petitioner contends that his trial counsel was ineffective for failing to request a mistrial, failing to investigate whether exculpatory video evidence existed, failing to acquire 911 recordings, and failing to communicate with Petitioner during *voir dire*. After a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

David D. Harris (on appeal), Nashville, Tennessee; and Kelly Young (post-conviction hearing) Nashville, Tennessee, for the appellant, James Randall Roskam.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Trial*

A summary of the facts underlying Petitioner's conviction can be found in this court's opinion in *State v. James Randall Roskam*, No. M2011-02071-CCA-R3-CD, 2012 WL 3611749 (Tenn. Crim. App., Aug. 20, 2012), *perm. app. denied* (Tenn., Nov. 26, 2012). In that opinion, this court gave the following synopsis of the facts:

> The victim, Santiago Martinez, testified at trial that in July 2010, he was homeless and living in Nashville. To make money, the victim sold The Contributor, a newspaper focusing on homeless people. The victim usually sold his newspapers at the corner of 4th Avenue and Broadway from 8:00 a.m. to about 11:00 p.m., and he always wrote his name on any five-, ten, and twenty-dollar bills he received in case he was robbed. The victim said that on the night of Saturday, July 17, 2010, he was selling newspapers when a man approached. The man told the victim that he was "going to collect taxes," pulled a knife, and put it against the victim's stomach. The victim felt the knife and saw that it had a stone handle. He said the knife was more than six inches long and "kind of scary." The man was wearing a dark shirt and jeans, was carrying a backpack, had a hat or bandana, and smelled of alcohol. The victim said he had seen the man one time previously when they were on a bus "going to a meal" for the homeless.
>
> The victim testified that the man told him that "if you don't give me the money, I'm going to stick you." The victim gave the man a five-dollar bill, and the man ran west on Broadway. The victim said that as the man was fleeing, the man said, "I got some money now, I got some money now, I can go drink." The victim used his Safe Link cellular telephone to call 911. At some point, the police brought the man, who was the appellant, to the victim, and the victim identified him as the robber. The victim also identified the appellant at trial as the robber. The State showed the victim a five-dollar bill with the name "Santiago" written on it, and the victim identified it as the bill he gave to the appellant. He said that he did not give the money to the appellant in order for the appellant to buy beer and that he had no intention of drinking beer with the appellant on the night of July 17.
>
> On cross-examination, the victim acknowledged that he testified at the appellant's preliminary hearing. When asked if he said at the hearing that he did not see the knife's handle, he stated, "It's kind of hard to remember.

It's been a while now." The victim usually made one hundred to two hundred dollars per day selling newspapers. However, on July 17, 2010, he had been working all day and had only five dollars. He said that the robbery occurred about 10:30 p.m., but he acknowledged that he said at the preliminary hearing the robbery occurred about 7:30 or 8:00 p.m. He did not remember if tourists were around him at the time of the robbery. He denied that the appellant asked to "split" a pack of beer with him and said that he did not know what the appellant did with the knife after the robbery.

Officer Michael Eva of the Metropolitan Nashville Police Department (MNPD) testified that about 10:30 p.m. on July 17, 2010, he responded to the victim's robbery call. The victim and his girlfriend were present, and the victim was upset and concerned about his money. The victim was not intoxicated. The victim claimed the robber approached him, pulled a knife, demanded money, and threatened to stab him. The victim said the robber was wearing a black shirt and blue jeans and was carrying a backpack. The victim also told the officer that the robber's name was "Roscoe" and that he gave the robber a "marked" five-dollar bill. The victim later identified the appellant as the man who robbed him.

On cross-examination, Officer Eva testified that he was on bike patrol when he responded to the victim's call. He was about one-half block away from the robbery and arrived at the scene within one or two minutes. He did not look for a knife after the robbery, and a knife was never found.

Officer Brian Theriac of the MNPD testified that he was on bike patrol on the night of July 17, 2010, and learned about the robbery. The robber had been described as a white male, who went by the name "Roscoe." The robber supposedly was wearing blue jeans and a black shirt and carrying a backpack. Officer Theriac rode along Broadway and saw the appellant, who matched the robber's description, walking over the railroad tracks just west of 10th Avenue. Officer Theriac yelled, "Roscoe," and the appellant answered, "[Y]eah, what." Officer Theriac asked the appellant where he was coming from, and the appellant said Broadway. The appellant allowed Officer Theriac to search him. The officer found a five-dollar bill marked with the victim's name and arrested the appellant.

On cross-examination, Officer Theriac testified that he did not find a knife on the appellant's person. He looked for the knife along Broadway but did not find it. The appellant did not attempt to flee from him, was not nervous

-3-

or upset, and was cooperative. Officer Theriac said the appellant claimed "he was going to get beer" at the nearby gas station.

Officer Keith Holley of the MNPD acknowledged that he transported the appellant back to the corner of 4th Avenue and Broadway for a "showup." The appellant smelled of alcohol, and the victim identified him as the robber.

On cross-examination, Officer Holley testified that many people were usually at 4th Avenue and Broadway on a Saturday night, especially in the summertime. He said he did not look for a knife.

*Id.*, at *1-2.

### *Post-conviction hearing*

Petitioner testified that trial counsel filed several motions in limine on his behalf prior to trial. He thought that all of the motions were granted including motions to "exclude some testimony about some other things, some prior acts and some things that happened that day[.]" Petitioner testified that during trial multiple witnesses testified concerning the excluded evidence. Trial counsel objected to the testimony, but did not request a mistrial.

On cross-examination, Petitioner testified that he wanted trial counsel to find out about "the 911 call" and "about the cameras that's all the way up and down Broadway." Petitioner did not know if any videotape of the offense from the cameras on Broadway existed because trial counsel failed to investigate the issue. Petitioner admitted that the issue concerning a mistrial was raised and addressed in part in his direct appeal. He agreed that trial counsel objected to any improper evidence, and the objections by trial counsel were sustained by the trial court. The court also instructed the jury on each occasion to disregard the testimony.

Trial counsel testified that she recalled Petitioner asking her about a 911 recording. She said:

I had talked to [Petitioner] about in his trial I would be bringing it up that if he was brandishing a knife on Broadway, like the victim said he would, why wasn't there many other 911 calls and I would say something to that effect. And he wanted all of the 911 calls for that night for the county, I believe, which wasn't really possible.

Trial counsel specifically testified that she made a tactical decision to use the absence of 911 calls as a defense in Petitioner's case. She explained to Petitioner that it would be bad for his defense if more 911 calls were brought out "since we wanted to point out that nobody else was calling and reporting a knife or a robbery on what is one of the busiest sections on Broadway."

Trial counsel testified that she filed a motion in limine to exclude statements concerning prior bad acts or other bad acts by Petitioner. She noted that Petitioner had one of the longest criminal records that she had ever seen with "many, many felonies and probably over fifty misdemeanors." She knew that it was very important "that we kept as much out as we could." Trial counsel noted that there was an accusation of a second robbery. The victim of that robbery was not present for trial. Trial counsel said, "And I wanted to keep out any mention of this other alleged robbery." Trial counsel testified that the motion in limine was granted. As noted in the appellate opinion from Petitioner's direct appeal, there were at least three instances where a witness made a statement about prior bad acts by Petitioner. Trial counsel immediately objected, and a curative instruction was issued to the jury by the trial court. She did not feel that a mistrial would have been granted by the trial court, and she did not feel that the testimony "rose to the level of a mistrial." Trial counsel testified:

> I would just point out that even though I did not ask for a mistrial I thoroughly explored the issue on his appeal and pointed it out to the Court and presented case law on my side of the argument and asked for a plain error review, which the Court of [Criminal] Appeals looked at and decided not to grant."

On cross-examination, trial counsel testified that she thought there were surveillance cameras somewhere on Broadway. She did not know who might operate the cameras. Trial counsel testified that she and the prosecutor had a conversation about "all the evidence, if I'm missing evidence, if evidence exists or not." They "believed that no surveillance caught the crime or there was no surveillance that existed." Trial counsel did not go to Broadway and look at every single camera.

When asked if she discussed jury selection with Petitioner, trial counsel testified:

> It's not usually my policy to discuss with defendants - - if they want to lean over and say something like, I don't like this person, I don't like that person, they're certainly free to do so. I'm happy to have that conversation. But I don't usually ask for their legal analysis about who I should strike or not strike.

Trial counsel did not recall having a conversation with Petitioner about whether a probation officer should have been struck from the jury panel.

*Analysis*

Petitioner contends that his trial counsel was ineffective for failing to request a mistrial following testimony concerning prior bad acts by Petitioner, failing to investigate whether exculpatory video evidence existed, failing to acquire 911 recordings, and failing to communicate with Petitioner during *voir dire* allegedly resulting in a probation officer serving on the jury.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* T.C.A. § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001). As a mixed question of law and fact, this court's review of a petitioner's ineffective assistance of counsel claim is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases[,]" *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense[,]" *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In other words, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made

after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

First, regarding Petitioner's claim that trial counsel failed to request a mistrial, the post-conviction court found that Petitioner "has not demonstrated any manifest necessity requiring a mistrial in his case." The trial court further found that if trial counsel had moved for a mistrial, there was no "merit to grant the request; as reflected [in] the trial record." The trial court pointed out that trial counsel made timely objections to the prohibited testimony, and "the Court issued the appropriate instruction to the jury." The record supports the post-conviction court's ruling. Trial counsel testified that she filed a motion in limine to exclude statements concerning prior bad acts by Petitioner. Petitioner had one of the longest criminal records that she had ever seen with "many, many felonies and probably over fifty misdemeanors." Trial counsel knew that it was very important "that we kept as much out as we could." Trial counsel noted that there was an accusation of a second robbery, and the victim of that robbery was not present for trial. Trial counsel said, "And I wanted to keep out any mention of this other alleged robbery." Trial counsel testified that the motion in limine was granted. As noted in the appellate opinion from Petitioner's direct appeal, there were at least three instances where a witness made a statement about prior bad acts by Petitioner. Trial counsel immediately objected, and a curative instruction was issued to the jury by the trial court. Trial counsel did not feel that a mistrial would have been granted by the trial court, and she did not feel that the testimony "rose to the level of a mistrial." Trial counsel testified:

> I would just point out that even though I did not ask for a mistrial I thoroughly explored the issue on his appeal and pointed it out to the Court and presented case law on my side of the argument and asked for a plain error review, which the Court of [Criminal] Appeals looked at and decided not to grant."

In the opinion on direct appeal this court considered this issue under plain error review and held:

> Turning to the instant case, the appellant failed to include a transcript of the motion hearing, which would have included the parties' arguments, the evidence presented, and the trial court's oral findings. Therefore, the record does not clearly establish what occurred in the trial court. Moreover, the appellant objected after the statements, and the trial court instructed the jury to disregard them. Thus, the appellant has not established that a substantial right was adversely affected. Finally, defense counsel was aware of the option to request a mistrial but chose not to do so. Therefore, the appellant has not established that he did not waive the issue for tactical reasons.

-7-

*State v. James Randall Roskam*, No. M2011-02071-CCA-R3-CD, 2012 WL 3611749, at *5 (Tenn. Crim. App., Aug. 20, 2012), *perm. app. denied* (Tenn., Nov. 26, 2012).

Petitioner has not demonstrated that he was prejudiced by trial counsel's failure to request a mistrial. As pointed out by both the trial court and this court on direct appeal, trial counsel objected to any inappropriate testimony, and the trial court sustained the objections and instructed the jury to disregard the testimony. It is presumed that the jury follows its instructions. *State v. Jordan*, 325 S.W.3d 1, 66 (Tenn. 2010). Furthermore, Petitioner did not present the transcript of the motion hearing at the post-conviction hearing. Thus, he failed to show any prejudice caused by trial counsel's decision to not include that transcript in the record of the direct appeal. This issue is without merit.

Next, Petitioner contends that trial counsel's performance was deficient because trial counsel failed to investigate whether exculpatory video evidence existed from any surveillance cameras located on Broadway in Nashville at the time of the offense. Concerning this issue, the trial court made the following findings:

> On cross-examination Petitioner testified that he wanted to talk to Trial Counsel about "cameras all the way up and down Broadway," but she never responded to his request. In contrast, Trial Counsel testified that she and Petitioner had discussed the issue. Trial Counsel also spoke with the State about the existence of surveillance footage. Although Trial Counsel conceded that she did not personally check with the businesses on Broadway to confirm the lack of any recordings, Trial Counsel stated that both she and the State were under the impression that no surveillance footage existed. The Court finds Trial Counsel's testimony to be credible. As the State pointed out at the evidentiary hearing, there is still no evidence before this Court that there was a working camera that could have captured the location and angle of the crime, [and] it is an "imaginary supposition that perhaps this [evidence] might have existed." Accordingly, the Court finds that Petitioner has failed to establish his burden by clear and convincing evidence that Trial Counsel was ineffective or that he was prejudiced by any alleged deficiency.

Petitioner failed to offer any proof at the post-conviction hearing that video evidence from any camera on Broadway existed or that the evidence would have been exculpatory. Therefore, he cannot show that trial counsel was ineffective in this respect, and he has not proven his claim by clear in convincing evidence. This issue is without merit.

Petitioner claims that trial counsel failed to "[s]eek and [a]cquire" any 911 calls that existed at the time of the robbery which "most likely would have produced exculpatory

-8-

evidence to aid his defense." Concerning this issue, the trial court made the following findings:

> Petitioner testified on direct and cross-examination that he tried to ask Trial Counsel about 911 calls multiple times but she was unable to provide information to his satisfaction. Specifically, Petitioner wanted Trial Counsel to produce transcripts for all the 911 calls made during the night in question in order to show that there were no calls other than the victim's call reporting a robbery at knifepoint [sic] on Broadway. In other words, Petitioner wanted the Trial Counsel to procure the requested documents to prove the absence of evidence.
>
> Trial counsel testified that she had conversations with Petitioner about the victim's 911 call and explained that it was to the defense's benefit that no other calls about the incident existed. Pointing out the inability of the State to produce other 911 reports was a tactical decision to support the defense's theory that it was incredulous that knifepoint robbery could go unseen on [a] street occupied by dense foot traffic.
>
> Not only does the Court credit Trial Counsel's testimony as to her strategic decision, Petitioner has provided no evidence to the Court on the issue. Petitioner has failed to meet his burden by clear and convincing evidence; the request for post-conviction relief as to this claim is denied.

The record supports the trial court's findings on this issue. Trial counsel testified that she recalled Petitioner asking her about a 911 recording. She said:

> I had talked to [Petitioner] about in his trial I would be bringing it up that if he was brandishing a knife on Broadway, like the victim said he would, why wasn't there many other 911 calls and I would say something to that effect. And he wanted all of the 911 calls for that night for the county, I believe, which wasn't really possible.

Trial counsel specifically testified that she made a tactical decision to use the absence of 911 calls as a defense in Petitioner's case. She explained to Petitioner that it would be bad for his defense if more 911 calls were brought out "since we wanted to point out that nobody else was calling and reporting a knife or a robbery on what is one of the busiest sections on Broadway."

We also point out that Petitioner failed to introduce any alleged 911 calls that were made at the time of the offense or that there was anything exculpatory in any alleged call. Again, Petitioner cannot show that trial counsel was ineffective in this respect, and he has not proven his claim by clear in convincing evidence. This issue is also without merit.

Finally, Petitioner argues that trial counsel was ineffective for failing to communicate with him during *voir dire* which led to a probation officer serving on the jury panel. It does not appear that petitioner raised this specific issue in his post-conviction petition and that it was raised for the first time during the post-conviction hearing on trial counsel's cross-examination. When asked if she discussed jury selection with Petitioner, trial counsel testified:

> It's not usually my policy to discuss with defendants - - if they want to lean over and say something like, I don't like this person, I don't like that person, they're certainly free to do so. I'm happy to have that conversation. But I don't usually ask for their legal analysis about who I should strike or not strike.

Trial counsel did not recall having a conversation with Petitioner about whether a probation officer should have been struck from the jury panel.

There was no proof presented at the post-conviction hearing that a probation officer served on the jury or how this would have affected the outcome of Petitioner's case. Petitioner did not call the juror to testify at the post-conviction hearing. Therefore, Petitioner has not demonstrated this claim by clear and convincing evidence. This issue is without merit.

In conclusion, Petitioner has failed to show that counsel's performance was deficient or that he was prejudiced by any alleged deficiencies. Petitioner is not entitled to relief. Accordingly, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE